IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN VALLIMONT, | |
| Plaintiff, | No. C 08-01227 JSW |
| v. | |
| CHEVRON RESEARCH & TECHNOLOGY COMPANY, | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| Defendant. | |

Now before the Court is the motion for summary judgment filed by defendant Chevron Energy Technology Company ("Chevron"). The Court finds the motion appropriate for decision without oral argument. N.D. Civ. L.R. 7-1(b). Having carefully considered the parties' arguments and relevant legal authority, the Court hereby GRANTS Chevron's motion for summary judgment.[1]

## BACKGROUND

This is an employment discrimination action brought by Plaintiff Stephen Vallimont ("Vallimont") for reverse discrimination, retaliation, wrongful termination in violation of public policy, and intentional and negligent infliction of emotional distress. Vallimont contends that he was discriminated against based on his race and gender (white and male) in violation of 42

---

[1] Vallimont submitted volumes of largely irrelevant evidence in opposition to Chevron's summary judgment motion. Chevron objected to much of this evidence. Vallimont has also objected to certain evidence submitted by Chevron in support of its motion. However, a significant portion of the evidence that the parties object to was not necessary to the resolution of this motion. Therefore, the Court need not rule on Vallimont or Chevron's objections at this time. To the limited extent the Court relied on evidence objected to in resolving the motion for summary judgment, the objections are overruled.

U.S.C. § 2000e ("Title VII") and California Government Code section 12900(a) through 12996, California Fair Employment and Housing Act ("FEHA"). Vallimont also alleges that he was unlawfully retaliated against for making complaints at work, also in violation of Title VII and FEHA.

Vallimont is a former Pilot Plant Operator in Chevron's High Pressure Lab located in Richmond, California. On May 14, 2007, Division Manager Jeffrey Hedges received an anonymous typewritten complaint concerning Vallimont's alleged conduct which was signed by "Worker Bee." (Declaration of Jeffrey Hedges ("Hedges Decl.") at ¶¶ 12-13.) The complaint stated that Vallimont had taken a picture of his genitals with a co-worker's phone, used racial slurs, and inappropriately touched and intimidated fellow workers. (*Id*., Ex. C.) After receiving the complaint, Hedges confirmed the allegations with the team manager and co-worker, and showed the complaint to the Human Resources Department ("HR Department") business partner and his superior. Hedges then forwarded the anonymous complaint to Chevron's Employee Relations Department for further action. (*Id.* at ¶ 16, Ex. D; Declaration of Kathryn Gallacher ("Gallacher Decl.") at ¶ 5.) The Employee Relations Department ("ER Department") is an extension of the HR Department which focuses on conducting comprehensive investigations of employee complaints and facilitating conflict resolution sessions. (Gallacher Decl. at ¶ 2.) The ER Department operates independently from Chevron's management group. (*Id*.)

On May 18, 2007, in compliance with company protocol, Vallimont was put on paid administrative leave pending investigation of the complaint. (Hedges Decl. at ¶ 17.) During the next two weeks, ER Department employee Kathryn Gallacher conducted a formal investigation. In connection with this process, she interviewed Vallimont and thirty-two other individuals. (Gallacher Decl. at ¶ 9.) Gallacher drafted a report summarizing the findings of her investigation. (*Id*. at ¶ 22, Ex. C.) Her investigation uncovered evidence that Vallimont referred to co-workers using racial slurs and other derogatory names and engaged in inappropriate touching of co-workers, including grabbing or touching co-workers' crotches. (*Id*. at ¶¶ 18, 22, Ex. C.) Gallacher also found that Vallimont treated co-workers in a

disrespectful and threatening manner, and that several co-workers were reluctant to come forward with information because they feared that Vallimont would retaliate against them. (*Id.*, Ex. C.)

Gallacher's report was provided to Hedges on May 30, 2007. (Hedges Decl. at ¶ 20.) The report related her factual findings, but did not make a recommendation as to whether Vallimont should be terminated. (Gallacher Decl. at ¶¶ 22, 25, Ex. C.) On May 31, 2007, after reviewing the report and consulting with his immediate supervisor and the HR Department, Hedges decided to terminate Vallimont. (Hedges Decl. at ¶¶ 21, 23.) Hedges stated that his decision was not based on any single incident of misconduct, and was instead influenced by Vallimont's pattern of behavior and the collective set of incidents described in Gallacher's report. (Hedges Decl. at ¶ 25.) Vallimont brought the instant suit challenging his termination on February 29, 2008.

Chevron moves for summary judgment on all of Vallimont's claims. The Court shall address additional facts as necessary in the remainder of this Order.

## ANALYSIS

**A.    Standards Applicable to Motions for Summary Judgment.**

A court may grant summary judgment as to all or a part of a party's claims. Fed. R. Civ. P. 56(a). Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if the fact may affect the outcome of the case. *Id.* at 248. "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *overruled on other grounds by Shakur v. Schriro*, 514 F.3d 878 (9th Cir. 2008).

A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986). The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Id.* Once the moving party meets this initial burden, the non-moving party must go beyond the pleadings and by its own evidence "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)) (stating that it is not a district court's task to "scour the record in search of a genuine issue of triable fact"). If the non-moving party fails to make this showing, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

**B.  Chevron's Motion for Summary Judgment.**

Chevron moves for summary judgment on each of Vallimont's claims. The Court will address each claim in turn.

**1.  Claim for Reverse Discrimination on the Basis of Race or Gender.**

Chevron moves for summary judgment on Vallimont's claims for employment discrimination under Title VII and the FEHA, in which he contends that other employees who were female and/or of minority heritage engaged in equally inappropriate conduct and were not terminated.

Title VII provides that, "[i]t shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The Supreme Court has held that Title VII prohibits discrimination against non-minorities to the same extent as discrimination against minorities. *See McDonald v. Santa Fe*

4

*Transp. Co.*, 427 U.S. 273, 280 (1976). Additionally, "Because of the similarity between state and federal employment discrimination laws, California courts look to pertinent federal precedent" when analyzing state law-based discrimination claims. *Guz v. Bechtel National, Inc.*, 24 Cal. 4th 317, 354 (2000).

In general, disparate treatment claims are evaluated under the familiar *McDonnell Douglas* framework, in which "the burden of production first falls on the plaintiff to make a prima facie case of discrimination." *Coghlan v. American Seafoods Co.*, 413 F.3d 1090, 1094 (9th Cir. 2005); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to present evidence "sufficient to permit the factfinder to conclude that the employer had a legitimate nondiscriminatory reason for the adverse employment action." *Id.* (citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506-07 (1993)). If the employer meets its burden, "the *McDonnell Douglas* framework drops out of the picture entirely, and the plaintiff bears the full burden of persuading the factfinder that the employer intentionally discriminated against him." *Id.* That is, the plaintiff bears the burden of showing that the employer's reason for the adverse employment action was pretextual. *See, e.g., Vasquez v. County of Los Angeles,* 349 F.3d 634, 640 (9th Cir. 2004).

To establish a prima facie case of discrimination under Title VII, Vallimont must show that (1) he belongs to a protected class, (2) he was performing according to his employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) similarly situated individuals outside his protected class were treated more favorably. *See Davis v. Team Elec. Co.,* 520 F.3d 1080, 1089 (9th Cir. 2008). The only significant difference in the FEHA analysis is that in order to establish a prima facie case, Vallimont must, in addition to the first four elements, demonstrate some other circumstances that suggest discriminatory motive. *See Guz*, 24 Cal. 4th at 355. The only element of the prima facie case at issue in this matter is whether other similarly situated employees were treated more favorably than Vallimont.

At summary judgment, the degree of proof necessary to establish a prima facie case is "minimal and does not even need to rise to the level of a preponderance of the evidence."

5

*Lyons v. England,* 307 F.3d 1092, 1112 (9th Cir. 2002) (quoting *Wallis v. J.R. Simplot Co.,* 26 F.3d 885, 889 (9th Cir. 1994)). Although the burden for establishing a prima facie case is an easy one to satisfy, Vallimont fails to do so. While Vallimont has adduced evidence on the first three elements of his claim, he fails to show that other similarly situated employees were treated more favorably.

The Ninth Circuit holds that "In order to show that the employees allegedly receiving more favorable treatment are similarly situated ... the individuals seeking relief must demonstrate, at the least, that they are similarly situated to those employees in all material respects." *Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006). Individuals are similarly situated when they have similar jobs and engage in similar conduct. *Vasquez,* 349 F.3d at 641.

Vallimont contends that although he may have committed acts of harassment that would be grounds for termination – such as making explicitly sexual remarks, subjecting others to unwanted touching and other inappropriate conduct – other employees who were not in his protected class committed equally offensive acts and were not terminated. Vallimont has submitted a voluminous quantity of evidence in opposition to summary judgment that reveals incidents of other employees calling co-workers racially derogatory names, engaging in inappropriate touching and, in one instance, engaging in a consensual sexual relationship. Nonetheless, the evidence does not demonstrate that other employees outside of his protected class engaged in *all* of the same types offensive behavior to the same degree and with the same frequency as Vallimont. Therefore, Vallimont has failed to demonstrate that another similarly situated employee was treated more favorably. *See McDonald*, 427 U.S. at 283 n.11 (noting that the relevant question is whether the plaintiff engaged in misconduct of "comparable seriousness" as other employees who were not terminated); *Plair v. E.J. Brach & Sons*, 105 F.3d 343, 349 n.3 (7th Cir. 1997) (noting that other employees were not similarly situated to the plaintiff because they did not engage in *all* of the same misconduct).

In addition, with regard to his FEHA claims, Vallimont has not met his burden to demonstrate the existence of a prima facie case of race or gender discrimination because he is unable to demonstrate that there are any circumstances suggesting discriminatory intent.

Therefore, summary judgment on his Title VII and FEHA claims is properly granted. However, even assuming *arguendo* that Vallimont had established a prima facie case, summary judgment is still warranted because Chevron has asserted a legitimate, nondiscriminatory reason for Vallimont's termination, and Vallimont has failed to demonstrate the reason is merely pretext.

### a. Chevron Has Demonstrated Legitimate Business Reasons for Terminating Employment.

Even if Vallimont successfully established a prima facie case of race or gender discrimination, the undisputed facts demonstrate that Chevron had legitimate business reasons to terminate Vallimont's employment. After reviewing the results of a thorough internal investigation, Hedges concluded that Vallimont engaged in behavior that violated Chevron's harassment and non-discrimination policies. Failure to perform in accordance with the standards set by the employer is sufficient to constitute a legitimate business reason for termination. *See Hersant v. Dept. of Social Servs.*, 57 Cal. App. 4th 997, 1006, 1009 (1997). Moreover, if Chevron failed to take action in the face of the complaints against Vallimont, it could have been exposed to substantial liability itself. *See Vasquez*, 349 F.3d at 655 (holding that an employer can be liable for an employee's harassment if it fails to take adequate steps to stop the misconduct).

In his opposition, Vallimont attacks the thoroughness and accuracy of the internal investigation conducted by Gallacher. He argues that he was never fully informed of the allegations against him and did not have the opportunity to suggest additional witnesses for interviews. He maintains that Gallacher was not adequately trained to assess witness credibility, that her notes and subsequent investigative report omitted positive statements that were made about him during the interviews and, that on the whole, the investigation did not meet standards of fairness and objectivity outlined by the Equal Employment Opportunity Commission and the California Department of Fair Employment and Housing.

Even if the Court accepts as true Vallimont's allegations that the investigation was flawed, Chevron is still entitled to summary judgment. Under the governing law, the relevant inquiry is not whether the plaintiff is objectively culpable for the misconduct that the employer maintains was the basis for termination. "Rather, courts only require that an employer honestly

7

1  believed its reason for its actions, even if its reason is foolish or trivial or even baseless."
2  *Villiarimo v. Aloha Island Air*, 281 F.3d 1054, 1063 (9th Cir. 2002) (internal citations and
3  quotations omitted); *see also Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir.
4  1991) (noting that for purposes of plaintiff's Title VII claim, it did not matter if employees who
5  spoke to the employer's investigator "were lying through their teeth" about plaintiff's alleged
6  misconduct, as long as the employer believed the allegations). Vallimont has failed to provide
7  any evidence demonstrating that Hedges did not honestly believe the allegations made in
8  Gallacher's report. Therefore, Chevron has met its burden of demonstrating legitimate business
9  reasons for terminating Vallimont's employment.

10  **b.    Vallimont Fails to Raise an Issue of Disputed Fact Regarding Pretext.**

12  Because Chevron presents evidence demonstrating a legitimate nondiscriminatory
13  reason for the termination, the burden shifts back to Vallimont. He must demonstrate that
14  Chevron's articulated reason is pretextual, and that his termination was actually motivated by
15  impermissible discrimination. *See St. Mary's Honor Center*, 509 U.S. at 510-11. A plaintiff
16  may do so "either [1] directly by persuading the court that a discriminatory reason more likely
17  motivated the employer or [2] indirectly by showing that the employer's proffered explanation
18  is unworthy of credence." *Merrick v. Farmers Ins. Group,* 892 F.2d 1434, 1437 (9th Cir. 1990)
19  (internal citations and quotations omitted).

20  Vallimont offers several arguments in an attempt to discredit Chevron's articulated
21  reason for terminating him. He again contends that other employees guilty of similar
22  misconduct were not terminated, that he had never been disciplined for poor performance prior
23  to the anonymous complaint and that Gallacher's investigation was flawed. Additionally, he
24  contends that his termination was motivated by long-standing animosity between himself and
25  two other employees, James Everard and Bob Lynn. None of Vallimont's proffered arguments
26  refute Chevron's legitimate nondiscriminatory reasons for termination.

27  As discussed above, Vallimont has failed to demonstrate that other employees similarly
28  situated to him were treated more favorably. No other employee was accused of misconduct of

the same magnitude or frequency as Vallimont. Vallimont's evidence indicates that numerous employees were involved in individual instances of inappropriate touching or derogatory name calling, but no single other employee stood accused of the same collective set of behaviors. Moreover, Vallimont's prior performance record also fails to discredit Chevron's articulated reason for termination. Hedges' declaration states that his decision was based on numerous instances of harassment and other inappropriate behavior that were disclosed in the investigative report, not based on Vallimont's inability to carry out his duties as a Pilot Plant Operator.

Similarly, Vallimont's attacks on Gallacher's investigation are not persuasive. In fact, Vallimont does not deny that he engaged in at least some of the misconduct he is accused of, *e.g.*, slapping other co-workers on the buttocks, and reaching into other's pockets to get tools. Instead, he maintains that he did not engage in this behavior to a greater extent than other employees. Additionally, although Vallimont contends in his opposition that Hedges and another employee were deeply involved in running the investigation and influenced its outcome, there is no evidence supporting this assertion. At best, the evidence indicates that David Tuk, a supervisor on the team, facilitated the investigation by escorting witnesses to interviews and helping Gallacher determine when various individuals would be on duty and available for interviews. And while some evidence indicates that Hedges received updates on the investigation while it was ongoing, there is no evidence that he actively participated or influenced the outcome in any way. Furthermore, even if Gallacher's report were incomplete or inaccurate, Vallimont has failed to demonstrate that Hedges, who made the termination decision, did not honestly believe the findings of the investigation. *See Villiarimo*, 281 F.3d at 1063.

Finally, Vallimont's theory that he was terminated because of long-standing animosity between himself and fellow co-workers Lynn and Everard fails to demonstrate that Chevron's articulated reason for termination was pretextual. First, the undisputed evidence shows that neither Lynn nor Everard played a role in the decision to terminate Vallimont. While both were interviewed as part of the investigation, the termination decision belonged to Hedges, who did

9

1  not consult them for advice or input. (Hedges Decl. at ¶ 22.) Second, any animosity on Lynn
2  and Everard's part does not appear to be based on protected characteristics such as gender or
3  race. Like Vallimont, both Lynn and Everard are white males. The animosity appears to be
4  based on Lynn and Everard's opinion that Vallimont was annoying or a less-than-model
5  employee. Legitimate, nondiscriminatory reasons are "reasons that are *facially unrelated to*
6  *prohibited bias*, and which, if true, would thus preclude a finding of *discrimination*." *Guz*, 24
7  Cal. 4th at 358 (emphasis in original). Therefore, the Court grants Chevron's motion with
8  respect to Vallimont's claims that he was discriminated against on the basis of his gender or
9  race.

### 3.   Claim for Retaliation Under Title VII and FEHA.

11  Chevron moves for summary judgment on Vallimont's claim for retaliation. In order to
12  prevail on a retaliation claim under Title VII or the FEHA, a plaintiff must establish a prima
13  facie case by demonstrating: (1) he or she engaged in a statutorily protected activity; (2) he or
14  she suffered an adverse employment action; and (3) a causal connection exists between the
15  protected activity and the adverse employment action. *Rav v. Henderson*, 217 F.3d 1234, 1240
16  (9th Cir. 2000); *Flait v. North American Watch Corp.*, 3 Cal. App. 4th 467, 476 (1992). As
17  with a discrimination claim, the burden then shifts to the employer to show a legitimate
18  nondiscriminatory reason for the adverse employment action. If the employer meets this
19  burden, the plaintiff must then demonstrate that the employer's reason is a pretext. *Miller v.*
20  *Fairchild Indus., Inc.*, 885 F.2d 498, 504 n.4 (9th Cir. 1989).

21  Vallimont claims that his termination was in retaliation for various complaints he made
22  against Everard and Lynn in 2004 and 2005, and Isabel Delgadillo in 2007. The complaints
23  against Everard and Lynn do not establish a prima facie case of retaliation because they do not
24  relate to a statutorily protected activity. Only complaints about practices that violate Title VII
25  or other employment laws are sufficient to establish a prima facie case of retaliation. *See Pool*
26  *v. VanRheen*, 297 F.3d 899, 910-11 (9th Cir. 2002) (holding that an employee's letter
27  complaining about policies and practices of her employer did not qualify as a statutorily
28  protected activity because it did not allege that the employer illegally discriminated on the basis

10

1  of race or sex); *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1047 (2005) (holding that
2  "complaints about personal grievances or vague or conclusory remarks that fail to put an
3  employer on notice as to what conduct it should investigate" do not qualify as protected activity
4  under the FEHA.)  Vallimont's complaint about Everard stemmed from a disagreement about
5  food kept in a common refrigerator.  Vallimont also complained about a disagreement with
6  Lynn, who was upset that Vallimont spoke out of turn in a disrespectful manner at a team safety
7  meeting.[2]

8  Furthermore, Vallimont has failed to establish a causal link between the incidents, which
9  occurred in 2004 and 2005, and his termination over two years later.  Vallimont's complaints
10 were fully investigated and resolved in 2005, and Gallacher reviewed the 2005 report as part of
11 her 2007 investigation.  (Declaration of Beth A. Huber ("Huber Decl.") at ¶ 2, Ex. Q; Gallacher
12 Decl. at ¶ 27.)  The long passage of time between the alleged protected act and the alleged
13 adverse action precludes drawing an inference of retaliation.  *See, e.g., Manatt v. Bank of Am.*,
14 339 F.3d 792, 802 (9th Cir. 2003) (holding that nine-month period of time between protected
15 activity and alleged retaliatory action was too long to create an inference of retaliation); *see also*
16 *Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 273 (2001) (per curiam) (noting that a court
17 may not infer causation from temporal proximity unless the time between an employer's
18 knowledge of protected activity and an adverse employment action is "very close" and citing
19 cases for the proposition that a three-month and four-month time lapse is insufficient to infer
20 causation).

21 Additionally, Vallimont maintains that he was retaliated against for complaining about
22 Delgadillo's excessive absences in 2007, shortly before he was terminated.  Like the complaints
23 against Everard and Lynn, Vallimont's complaints about Delgadillo do not support his
24 retaliation claim.  As an initial matter, it is unclear that Vallimont's complaint against
25 Delgadillo related to a statutorily protected activity.  Chevron maintains that Vallimont

---

[2] Vallimont belatedly attempts to assert that his disagreement with Lynn stemmed from his attempt to report a workplace safety issue.  However, the evidence indicates that Lynn was angered about the manner in which the issue was raised, not by the safety issue itself.  Furthermore, even if the Court accepts Vallimont's characterization, Vallimont has failed to demonstrate a causal link between the complaint, which was investigated and resolved two years prior to his termination, and Vallimont's termination.

11

complained about unfair enforcement of attendance and time-keeping policies, not about discriminatory employment actions. In contrast, Vallimont contends that he complained that Delgadillo received preferential treatment with regard to attendance on account of her race and gender. Nevertheless, even if the Court assumes that the complaints relate to a statutorily protected activity and that Vallimont has satisfied his prima facie burden on the other elements of his claim, Chevron is still entitled to summary judgment. Chevron has articulated a legitimate, non-retaliatory reason for his termination, *i.e.*, that an investigation revealed that he had engaged in multiple forms of inappropriate behavior, including unwanted touching and groping of co-workers, using racial slurs, and threatening and intimidating other employees. As discussed above, although Vallimont criticizes the investigation as flawed, he has failed to offer any evidence demonstrating that Hedges and others involved in the termination decision did not honestly believe the report to be accurate, or that it served as a mere pretext for his termination.

**4. Vallimont's Claims for Wrongful Termination in Violation of Public Policy.**

Chevron moves for summary judgment on Vallimont's state law claim for wrongful termination in violation of public policy. Vallimont claims that he was terminated in violation of the well-established public policy against discrimination embodied in Title VII and the FEHA, and public policy promoting work place safety reflected in various state and federal regulations. A plaintiff claiming wrongful termination in violation of public policy must demonstrate the existence of an employer-employee relationship, a sufficient violation of public policy and that the employee suffered damages of which the termination was the legal cause. *See Holmes v. General Dynamics Corp.*, 17 Cal. App. 4th 1418, 1426, n.8 (1993). Additionally, the plaintiff must show that there was a nexus between the public policy violations and his or her termination. *Turner v. Anheuser-Busch, Inc.*, 7 Cal. 4th 1238, 1258 (1994).

Vallimont has not provided any evidence demonstrating that there is a triable issue with regard to his wrongful termination claim. As discussed above, he has not established that he was terminated on the basis of his race or gender. Furthermore, Vallimont has not demonstrated that his termination was the result of complaints about workplace safety issues. In his deposition, Vallimont stated that the animosity between himself and Lynn began when he

12

voiced concern about the safety of a vent line in High Pressure Lab during a team meeting, and Lynn became upset. Chevron disputes that the incidents in 2004 and 2005 with Lynn and Everard stemmed from safety complaints, and instead maintains that the incidents were based on personal disagreements. Even if the Court adopts Vallimont's characterization of events, however, he has failed to demonstrate the requisite nexus between the safety complaints and his termination, which occurred over two years later. Therefore, Chevron is entitled to summary judgment on this claim.

### 5. Vallimont's Claims for Intentional and Negligent Infliction of Emotional Distress.

Chevron moves for summary judgment on Vallimont's state law claims for intentional and negligent infliction of emotional distress. Vallimont argues that he suffered emotional distress because he was terminated from a job he held for over twenty years, wrongly accused of groping fellow employees and using racial slurs. Chevron maintains that both types of emotional distress claims are barred by the exclusive remedy provisions of California's workers' compensation laws. Chevron is correct, and accordingly, is entitled to summary judgment on both the negligent and intentional infliction of emotional distress claims.

Section 3602(a) of the California Labor Code provides in relevant part that "Where the conditions of compensation set forth in Section 3600[3] concur, the right to recover such compensation is ... the sole and exclusive remedy of the employee or his or her dependents against the employer ...." The California Supreme Court has held that the exclusivity rule bars

---

[3] Section 3600 provides in relevant part:
  (a) Liability for the compensation provided by this division, in lieu of any other liability whatsoever to any person except as otherwise specifically provided in Sections 3602, 3706, and 4558, shall, without regard to negligence, exist against an employer for any injury sustained by his or her employees arising out of and in the course of the employment and for the death of any employee if the injury proximately causes death, in those cases where the following conditions of compensation concur:
    (1) Where, at the time of the injury, both the employer and the employee are subject to the compensation provisions of this division.
    (2) Where, at the time of the injury, the employee is performing service growing out of and incidental to his or her employment and is acting within the course of his or her employment.
    (3) Where the injury is proximately caused by the employment, either with or without negligence.

13

1  suits for emotional distress based on conduct that normally occurs in the workplace. *Cole v.*
2  *Fair Oaks Fire Prot. Dist.*, 43 Cal. 3d 148, 151 (1987). Non-consensual termination of
3  employment, as well as the acts leading up to the termination, are generally the result of
4  conduct normally occurring in the workplace. *Shoemaker v. Myers*, 52 Cal. 3d 1, 19-20 (1990).
5  Furthermore, the exclusive remedy bar applies to injuries that are solely emotional as well as to
6  those that have a physical component, regardless of whether they are intentionally or
7  negligently inflicted. *Livitsanos v. Super. Ct.*, 2 Cal. 4th 744, 753-54 (1992) ("So long as the
8  basic conditions of compensation are otherwise satisfied (Lab. Code, § 3600), and the
9  employer's conduct neither contravenes fundamental public policy nor exceeds the risks
10 inherent in the employment relationship, an employee's emotional distress injuries are
11 subsumed under the exclusive remedy provisions of workers' compensation") (internal citations
12 omitted).
13     Vallimont argues that he is not precluded from seeking tort recovery for his emotional
14 distress because he was terminated in violation of public policy as embodied in Title VII, the
15 FEHA, and various state and federal workplace safety regulations. *See Gantt v. Sentry Ins.*, 1
16 Cal. 4th 1083, 1100 (1992) (holding that the workers' compensation exclusivity bar does not
17 apply when the employer's actions are motived by an animus that violates fundamental public
18 policy), *overruled on other grounds by Green v. Ralee Engineering Co.*, 19 Cal. 4th 66 (1998).
19 Nonetheless, Vallimont cannot maintain a claim for intentional or negligent infliction of
20 emotional distress because his discrimination, retaliation and wrongful termination claims do
21 not survive summary judgment.
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Chevron's motion for summary judgment. A separate judgment shall issue and the Clerk is directed to close the file.

**IT IS SO ORDERED.**

Dated: October 8, 2009

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE